## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

SHERRY BURRILL,

       Plaintiff,

v.                                                    No. Civ. 09-1083 LH/GBW

PATRICK R. DONAHOE[1], Postmaster
General, United States Postal
Service,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Patrick R. Donahoe's Motion for

Summary Judgment (Doc. 25).  The Court, having considered Defendant's motion for summary

judgment, the briefs, evidence, relevant law, and otherwise being fully advised, concludes that

Defendant's motion for summary judgment should be granted.

## I.     INTRODUCTION

This case arises from the allegedly improper manner in which the Equal Employment

Opportunity Office ("EEO") of the United States Postal Service ("USPS") handled Plaintiff Sherry

Burrill's two pre-complaints for counseling.  Plaintiff, at all relevant times an employee with the

USPS, asserts a retaliation claim under Title VII, contending that she engaged in protected activity

by bringing forward complaints of discrimination and retaliation to the USPS EEO.  Plaintiff alleges

that Defendant adversely affected her employment and statutory rights by refusing to timely process

---

[1]Subsequent to the initiation of this suit, Patrick R. Donahoe became the United States
Postmaster General.  He has therefore been automatically substituted as the proper Defendant in
this case in accordance with Federal Rule of Civil Procedure 25(d).

her claims, failing to process her second claim at all, delaying regulatory process for the investigation and resolution of her retaliation claims, and intentionally misleading her into believing that her claims were being appropriately handled.

## II.   FACTUAL BACKGROUND

On August 25, 2008, Plaintiff filed an Information for Pre-Complaint Counseling ("First Pre-complaint") with the USPS's EEO, requesting an appointment to meet with a Dispute Resolution Specialist.  (Def.'s Mem. in Supp. of Mot. for Summ. J. (Doc. 26) ("MSJ"), Undisputed Fact ("UF") ¶ 1.)  In the First Pre-complaint, Plaintiff alleged discrimination on the basis of gender when the USPS removed her as Manager at the Auxiliary Service Facility ("ASF") and reassigned her to the Processing and Distribution Center to serve as a platform (dock) supervisor.  (*Id.*, UF ¶ 2.)

Following submission of her First Pre-complaint, Plaintiff received from the USPS EEO a letter acknowledging receipt of her request for pre-complaint counseling.  (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. (Doc. 28) ("Resp."), Ex. 7 (Doc. 28-7).)  Among other things, the letter informed her that the counseling process is limited to 30 calendar days unless she agreed to extend the counseling period for up to an additional 60 calendar days.  (*See id.*)  Plaintiff also received from the USPS EEO a document entitled "What You Need To Know About EEO, Publication 133."  (*Id.*, UF ¶ 1 & Ex. 1 (Doc. 28-1) at 1.)  Plaintiff understood that this booklet was intended to guide her through the EEO process and she relied upon it.  (*Id.*, UF ¶ 1.)  Publication 133 explains the purpose of the booklet:  "It explains your rights, responsibilities, and remedies under those [EEO] laws and the EEO complaint process."  (*Id.*, UF ¶ 2 & Ex. 1 (Doc. 28-1) at 2.)  The booklet further states, "The purpose of the precomplaint process is to advise you of your rights and responsibilities under the EEO process, to identify your claims, and to try to resolve the matter informally."  (*Id.*, UF ¶ 3 & Ex. 1 (Doc. 28-1) at 3.)

Publication 133 also includes an entire section related to pre-complaint processing.  (*Id.*, UF ¶ 5 & Ex. 1 (Doc. 28-1) at 4-5.)  The section describes the counseling responsibilities of the EEO Alternate Dispute Resolution ("ADR") specialist as follows: (1) to explain the process to the pre-complainant, his or her rights and responsibilities in the process, and appeal procedures; (2) to work with the pre-complainant to identify and define claims; (3) to explain the pre-complainant's option to engage in REDRESS, the USPS's ADR process, during the pre-complaint process; (4) to conduct informal counseling inquiries, generally by telephone but possibly by mail or in person; (5) to make necessary inquiries of USPS employees and supervisors and to review relevant regulations and documents, including comparative employee data, in an attempt to understand the issues and resolve the matter; and (6) to discuss settlement alternatives with the pre-complainant and the other involved party.  (*See id.*)  None of these activities were conducted during the pre-complaint process for Plaintiff's claims.  (*Id.*, UF ¶ 6.)

On October 24, 2008, Plaintiff sent a letter to the USPS's National EEO Investigative Services Office ("NEEOISO"), informing NEEOISO that she had not received a response to her request to meet with an EEO counselor, nor had she been issued a right to file a formal complaint. (MSJ, UF ¶ 3; Resp., Ex. 9 (Doc. 28-9) at 3.)  On October 28, 2008, Kimberly Lewis, Manager, EEO Services, NEEOISO, responded to Plaintiff's October 24, 2008 letter.  (MSJ, UF ¶ 4.)  Ms. Lewis informed Plaintiff that her office had received Plaintiff's pre-complaint package and that it had been forwarded to the Southwest Area for continued processing.  (*Id.*)

On November 14, 2008, Plaintiff wrote to Ms. Lewis, informing her, once again, that she had not received a response regarding her request for counseling.  (*Id.*, UF ¶ 5.)  In addition, she stated that she expected to receive from the USPS a written report containing management's response to her claims of discrimination, along with a signed PS Form 2579-A, a Notice of Right to File

3

Complaint, by no later than December 4, 2008.  (*Id.*)  By another letter dated November 14, 2008, Plaintiff complained to the U.S. Equal Employment Commission about the USPS's handling of EEO complaints and its failure to follow the processing procedures.  (*See* Resp., Ex. 9 (Doc. 28-9) at 1.)

On December 10, 2008, Nicolas Juarez, Manager, EEO Dispute Resolution, EEO Field Operations, Southwest Area, sent a letter to Plaintiff in response to her November 14, 2008 correspondence to Ms. Lewis.  (MSJ, UF ¶ 6 & Ex. F (Doc. 26-7).)  In his letter, Mr. Juarez informed Plaintiff, among other things, that he had made inquiries regarding the processing of Plaintiff's informal allegations; that he was aware of some unforeseen circumstances that slowed the processing of her claims; and that he would be willing to discuss those circumstances with her, if she contacted him at the enclosed number.  (*See id.*)  Mr. Juarez also informed Plaintiff in the letter that if she decided to pursue her claims to the formal stage through the EEO Administrative process, the USPS would provide her with the report requested in her November 14, 2008 letter. (*Id.*, UF ¶ 7.)  Plaintiff never responded to Mr. Juarez's offer to discuss the circumstances that slowed the processing of her claims.  (*See id.*, Ex. C (Doc. 26-3) at 47.)

Michael Westervelt was the EEO ADR specialist who was assigned to the pre-complaint processing of Plaintiff's First Pre-complaint.  (Resp., UF ¶ 10.)  Mr. Westervelt, however, did not know that Plaintiff had made a request to meet with an EEO ADR specialist.  (*Id.*, UF ¶ 11.) Mr. Westervelt never met with, nor did he have any email communications with, Plaintiff during the entire pre-complaint process, and he has no recollection of speaking with Plaintiff during the pre-complaint process.  (*Id.*, UF ¶¶ 12-13.)  Indeed, Plaintiff never spoke with Mr. Westervelt during the processing of the First Pre-complaint, despite that she left three voice mails for him.  (*Id.*, UF ¶ 25.)  Nor did any other EEO ADR Specialist ever contact Plaintiff during the pre-complaint process.  (*Id.*, UF ¶ 4.)  Mr. Westervelt also never referenced any comparator information.  (*Id.*, UF

4

¶ 15.)  Nor did he ever speak with any management employee for the purpose of getting statements or documents during the course of processing the First Pre-complaint.  (*Id.*, UF ¶ 16.)  Nor did the USPS ever provide Plaintiff a 60-day extension form for her pre-complaint processing, as it is required to do if the employee elects REDRESS.  (*See id.*, UF ¶ 17 & Ex. 6 (Doc. 28-6) at 31.)  No REDRESS meeting was ever scheduled or even attempted to be scheduled.  (*Id.*, UF ¶ 18.)  The only activity Mr. Westervelt engaged in during the processing of the First Pre-complaint was to send to Plaintiff on November 21, 2008, the Notice of Right to File a Formal Complaint ("Notice").  (*See id.*, UF ¶ 14 & Ex. 6 (Doc. 28-6) at 44-45.)  Prior to sending out the Notice, Mr. Westervelt had done nothing to resolve Plaintiff's First Pre-complaint.  (*See id.*, UF ¶ 19 & Ex. 6 (Doc. 28-6) at 45.)  Mr. Westervelt knew, however, that, as an EEO ADR specialist, the regulations required him to process a pre-complaint in a prompt, fair, and impartial manner and that he had an obligation to not in any way restrain a complainant from making a complaint.  (*Id.*, UF ¶ 22 & Ex. 6 (Doc. 28-6) at 50-52.)

Mr. Westervelt avers in his Declaration that, although he does not have an independent recollection of his dealings with Plaintiff, any failure of his to comply with any deadlines were not motivated by a desire to retaliate against her for having initiated pre-complaint counseling.  (MSJ, Ex. O (Doc. 26-16) ¶ 7.)  He explained that, as an EEO ADR Specialist, he neither represents management nor employees; rather, his job is to provide counseling to employees and to settle employee issues, if possible.  (*Id.*)  Plaintiff admits that she does not know why Mr. Westervelt failed to comply with the pre-complaint counseling deadlines.  (*Id.*, Ex. C (Doc. 26-3) at 39-40.) It is Plaintiff's opinion, however, that the reason he failed to comply with the deadlines is that it was in retaliation for her having filed the First Pre-complaint.  (*Id.*, Ex. C (Doc. 26-3) at 42.)

Plaintiff never requested an extension of time for the processing of her First Pre-complaint. (Resp., UF ¶ 23.)  On December 10, 2008, Plaintiff received the Notice from Mr. Westervelt,

informing her that the matters raised in her First Pre-complaint were not resolved and that she had the right to file a formal complaint within 15 calendar days of her receipt of the Notice.  (MSJ, UF ¶ 10.)

On December 12, 2008, Mr. Westervelt attempted to contact Senior Plant Manager Beau Meyer and Manager Mark Jones, the alleged discriminating officials identified by Plaintiff in her First Pre-complaint, but neither individual responded.  (*See* Resp., Ex. 6 (Doc. 28-6) at 16-17; MSJ, Ex. J (Doc. 26-11) at 2.)

On December 18, 2008, Plaintiff filed an EEO Complaint of Discrimination ("EEO Complaint") with the USPS, alleging discrimination on the bases of gender, age, and retaliation.  (MSJ, UF ¶ 11 & Ex. I (Doc. 26-10).)  Her attorney, Michael Mozes, signed the complaint on her behalf as well.  (*See id.*, Ex. I (Doc. 26-10).)  Had Plaintiff received the Notice earlier, she would have filed her EEO Complaint earlier.  (*Id.*, Ex. C (Doc. 26-3) at 50-51.)

Subsequently, on December 22, 2008, Plaintiff filed another Information for Pre-complaint Processing ("Second Pre-complaint") with the USPS's EEO, requesting an appointment to meet with a Dispute Resolution Specialist.  (*Id.*, UF ¶ 8.)  In her Second Pre-complaint, Plaintiff alleged that "[t]he Tampa NEEOISO, Southwest Area, and Albuquerque District EEO Complaint Offices of the U.S. Postal Service" retaliated against her for having filed the First Pre-complaint by "deliberately and willfully" delaying the processing of her request for informal counseling and failing to timely issue a Notice of Right to File Individual Complaint.  (*Id.*, UF ¶ 9 & Ex. G (Doc. 26-8) at 1.)  In signing the Second Pre-complaint, Plaintiff acknowledged the following in the "Authorization" section:

> I am aware that the claim(s) contained herein shall by-pass the pre-complaint process *if* like or related to a formal complaint that I have already filed, or *if* the claim(s) constitutes a spin-off complaint.  (A spin-off complaint contests the manner in which

6

a previously filed complaint is being processed.)  In completing this [pre-complaint form], I recognize that the Manager, Dispute Resolution will review the claim(s) contained herein and determine how they shall be processed.  I will be notified, in writing, if the Manager determines that my claim(s) shall be processed as amendments or appendages to a formal complaint that I have already filed.

(*Id.*, Ex. G (Doc. 26-8) at 3.)  NEEISO received Plaintiff's Second Pre-complaint on December 29, 2008. (Resp., UF ¶ 21.)

On January 5, 2009, Mr. Westervelt spoke with Labor Relations Manager Janet Peterson regarding Plaintiff's First Pre-complaint, and she informed him that she believed that Plaintiff was not aggrieved under Title VII and was not willing to resolve the complaint informally.  (*See* MSJ, Ex. J (Doc. 26-11) at 2 & Ex. O (Doc. 26-16) ¶ 8.)

On January 12, 2009, Mr. Westervelt prepared an EEO Dispute Resolution Specialist's Inquiry Report ("DRS Report"), which Plaintiff received in January.  (*Id.*, UF ¶ 12.)  The DRS Report has the purpose of setting forth the contacts made with management during the pre-complaint process and the documents and statements gathered from the complainant and management at the pre-complaint stage. (Resp., UF ¶ 8.)  The DRS Report prepared by Mr. Westervelt described only the following contacts with Plaintiff and management: the attempted contacts made on December 12, 2008, with Beau Meyer and Mark Jones; Mr. Westervelt's interview with Ms. Peterson on January 5, 2009; and his mailing of the Notice to Plaintiff by regular mail on November 21, 2008. (*See id.*, Ex. 4 (Doc. 28-4) at 2.)

On January 21, 2009, NEEOISO issued a Dismissal of Formal EEO Complaint ("Dismissal"), on the ground that the EEO Complaint failed to state a claim because Plaintiff was not "aggrieved" where she did not allege any loss related to a term, condition, or privilege of employment.  (*See* MSJ, UF ¶ 13 & Ex. K (Doc. 26-12) at 2-4.)  Footnote 1 of the Dismissal noted the following:

> Complainant also expressed dissatisfaction with the processing of her complaint at the informal and formal stages, in accordance with section IV.D. of Chapter 5 of the Equal Employment Opportunity Commission's Management Directive 110, this matter is being referred to the agency official responsible for the quality of complaints processing. An inquiry will be conducted and you will be issued a separate document regarding your concerns.

(*Id.*, Ex. K (Doc. 26-12) at 1 n.1; Resp., Ex. 8 (Doc. 28-8) at 1 n.1.) Mr. Westervelt was not involved in the processing of Plaintiff's formal EEO Complaint. (*See* MSJ, Ex. O (Doc. 26-16) ¶ 1.)

Plaintiff received a copy of the Dismissal on or about January 28, 2009. (*Id.*, UF ¶ 14.) Plaintiff did not appeal the Dismissal to the Office of Federal Operations ("OFO"), Equal Employment Opportunity Commission ("EEOC"). (*Id.*, UF ¶ 15.) Nor did she appeal the Dismissal by initiating a civil action in federal court. (*See id.*, UF ¶ 16.)

Plaintiff, having not received a separate document concerning her Second Pre-complaint, assumed that it was still in the pre-complaint processing stage. (*See* Resp., UF ¶ 24 & Ex. 2 (Doc. 28-2) at 28.) On July 20, 2009, Mr. Mozes sent a letter to NEEOISO, informing NEEOISO that the 180-day clock had run on Plaintiff's EEO Complaint and requesting a copy of the investigative file with the corresponding Final Agency Decision. (MSJ, UF ¶ 17.) On July 29, 2009, Katherine Baker-Abrams, EEO Services Analyst, NEEOISO, wrote to Mr. Mozes informing him that Plaintiff's EEO Complaint was dismissed on January 21, 2009. (*Id.*, UF ¶ 18.) She enclosed a copy of the decision and proof of delivery indicating that Mr. Mozes and Plaintiff had received the decision on January 28, 2009. (*Id.*)

On August 10, 2009, Plaintiff sent a letter to NEEOISO stating that she was seeking a response as to why her Second Pre-complaint had not been processed. (*See id.*, UF ¶ 19 & Ex. C (Doc. 26-4) at 97; Resp., Ex. 9 (Doc. 28-9) at 4.) On August 14, 2009, Kimberly Lewis responded stating, among other things, that Plaintiff's concerns about the processing of the EEO Complaint had

been addressed by Mr. Juarez; that her "dissatisfaction with the processing of this complaint was noted in the dismissal decision"; and that it was "inappropriate to process a new complaint regarding the dissatisfaction" with the EEO Complaint.  (MSJ, UF ¶ 20 & Ex. N (Doc. 26-15).)  Plaintiff treated Ms. Lewis's August 14, 2009 letter as a final agency decision.  (*Id.*, Ex. C (Doc. 26-3) at 91-92.)  Ms. Lewis avers that her failure to process the Second Pre-complaint was not in retaliation for Plaintiff having filed her EEO Complaint, but rather, because Ms. Lewis construed the Second Pre-complaint to be a spin-off complaint that, according to her understanding of EEOC regulations, should be referred to the agency official responsible for complaint processing and/or processed as part of the original complaint, and should not be processed as a separate and independent claim. (MSJ, Ex. P (Doc. 26-17) ¶¶ 4-5.)

On November 13, 2009, Plaintiff filed a one-count complaint in federal district court, asserting a claim for retaliation under Title VII.  (*See* Compl. (Doc. 1).)  Plaintiff alleges that, in retaliation for her having filed the First Pre-complaint, and later the EEO Complaint, Defendant failed to provide timely pre-complaint counseling and refused to process her Second Pre-complaint altogether.  (*See id.* ¶ 35; MSJ, Ex. C at 28-29, 68.)

## III.    STANDARD

Summary judgment is appropriate only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).  "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party."  *Id.* (internal quotations omitted).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

9

motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment.  *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists.  *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial.  *Id.*  The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.*; *Kaus v. Standard Ins. Co.*, 985 F.Supp. 1277, 1281 (D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.

## IV.   ANALYSIS

### A.   Overview of Pre-complaint and Complaint Processing

Individual complaints of employment discrimination and retaliation prohibited by Title VII are processed in accordance with the EEOC regulations set forth in 29 C.F.R. §§ 1614.101 through 1614.110.  *See*, *e.g.*, 29 C.F.R. § 1614.103(a).  According to those regulations, the USPS must provide "for the prompt, fair and impartial processing of complaints."  *Id.* § 1614.102(a)(2).  The EEO Director is responsible for providing for counseling of aggrieved employees, for the receipt and processing of discrimination complaints, and for assuring that complaints are fairly and thoroughly investigated and that final action is taken in a timely manner.  *Id.* § 1614.102(c)(4)-(5).

Section 1614.105 sets forth procedures for "Pre-complaint processing."  29 C.F.R. § 1614.105.  An aggrieved person "must consult a Counselor prior to filing a complaint in order to

try to informally resolve the matter." *Id.* § 1614.105(a).   At the initial counseling session, a counselor must advise the aggrieved employee in writing of their rights and responsibilities, including the following:  the right to request a hearing or an immediate final decision after an investigation by the agency, the right to file a notice of intent to sue, the duty to mitigate damages, administrative and court time frames, and that only the claims raised in pre-complaint counseling (or issues or claims like or related to issues or claims raised in pre-complaint counseling) may be alleged in a subsequent complaint filed with the agency. *See id.* § 1614.105(b)(1).   Counselors must also advise aggrieved employees that they may choose between participation in the ADR program, where offered by the agency, and counseling activities. *Id.* § 1614.105(b)(2).   A counselor must not attempt in any way to restrain an aggrieved employee from filing a complaint. *Id.* § 1614.105(g).

In addition, counselors must "conduct counseling activities in accordance with instructions contained in Commission Management Directives." *Id.* § 1614.105(c).   EEOC's Management Directive 110 states that the EEO counselor must perform several tasks in all cases, including the following: (1) advise the aggrieved employee about the EEO complaint process including the agency ADR program; (2) determine the claim(s) and basis(es) raised by the employee; (3) conduct an inquiry during the initial interview with the employee for the purpose of determining jurisdictional questions; (4) seek a resolution of the dispute at the lowest possible level, unless the employee elects to participate in the ADR program; (5) advise the aggrieved employee of her right to file a formal discrimination complaint if attempts to resolve the dispute through EEO counseling or ADR fail to resolve the dispute; and (6) prepare a report to document that the counselor undertook the required counseling actions and to resolve any jurisdictional questions that arise.  *See* U.S. Equal Employment Opportunity Commission Management Directive 110 – Chapter 2 § III (1999), *available at*  http://www.eeoc.gov/federal/directives/md110/chapter2.html.

A counselor must conduct the final interview with the aggrieved employee within 30 days of the date the employee contacted the agency's EEO office to request counseling, unless the employee agrees to a longer counseling period, which may be for no more than an additional 60 days, or the employee chooses an ADR procedure, in which case the pre-complaint processing period shall be 90 days.  29 C.F.R. § 1614.105(d)-(f).  If the matter has not been resolved, the counselor must inform the aggrieved person in writing, not later than the thirtieth day after contacting the counselor, of the right to file a discrimination complaint.  *Id.* § 1614.105(d).

Once a complainant files a formal complaint, the agency is required to conduct an impartial and appropriate investigation within 180 days of the filing of the complaint, unless the parties agree to extend the time period.  *Id.* §§ 1614.106(e)(2) & 1614.108(e).  Prior to a request for a hearing in a case, the agency must dismiss an entire complaint that fails to state a claim under § 1614.103 or 1614.106(a) or that "alleges dissatisfaction with the processing of a previously filed complaint."  *Id.* § 1614.107(a)(1) & (a)(8).  Otherwise, a complainant is entitled to a hearing before an administrative judge, if requested by complainant.  *See id.* § 1614.109(a).

When an agency dismisses an entire complaint under § 1614.107, the agency must take final action by issuing a final decision.  *Id.* § 1614.110(b).  "The agency shall issue the final decision within 60 days of receiving notification that a complainant has requested an immediate decision from the agency, or within 60 days of the end of the 30-day period for the complainant to request a hearing or an immediate final decision where the complainant has not requested either a hearing or a decision."  *Id.*  The final action must contain, among other things, notice of the complainant's right to appeal to the EEOC and the right to file a civil action in federal district court.  *Id.*

### B.    Plaintiff Has Failed to State a Valid Title VII Claim

In this case, Defendant argues that, regardless of whether he satisfied the regulatory

obligations for pre-complaint processing, Plaintiff's claim fails as a matter of law because it is a "spin-off" complaint not cognizable under Title VII.  The courts, including the Tenth Circuit, to have addressed this issue have uniformly held that Title VII does not create a cause of action for improper processing of EEO or EEOC complaints.  *See*, *e.g.*, *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000) ("It is well established that a private-sector employee has no cause of action against the EEOC for its failure to process a charge of discrimination. . . . A similar rule is warranted here. Jordan presents no persuasive reason why she, as a federal employee, should be given an implied failure-to-process cause of action under Title VII that has been consistently denied to private plaintiffs."); *Scheerer v. Rose State College*, 950 F.2d 661, 663 (10th Cir. 1991) ("The circuits which have addressed the issue have uniformly held that no cause of action against the EEOC exists for challenges to its processing of a claim.").

The Tenth Circuit's decision in *Rockefeller v. Abraham*, 58 Fed. Appx. 425 (10th Cir. Feb. 5, 2003) (unpublished decision), supports Defendant's argument that a violation of regulations governing pre-complaint processing, like violations of complaint-processing regulations, does not create an independent cause of action under Title VII.  In *Rockefeller*, the plaintiff asserted that his employer, the Secretary of the United States Department of Energy, violated 29 C.F.R. § 1614.105(g), which directed EEOC counselors not to "attempt in any way to restrain the aggrieved person from filing a complaint."  *Rockefeller v. Abraham*, No. Civ. 01-399 JP/LCS, Mem. Op. and Order (Doc. 58, filed Mar. 21, 2002) at 4 (quoting 29 C.F.R. § 1614.105(g)).  The Honorable James A. Parker, relying on *Scheerer* and *Jordan*, held that "the law is clear that a violation of a federal regulation governing the handling of Plaintiff's EEOC complaint does not create an independent cause of action under Title VII."  *Id.* at 4-5.  On appeal, the Tenth Circuit stated that it "agree[d] with the district court's analysis" and affirmed the entry of summary judgment "for substantially the

same reasons set forth" in Judge Parker's March 21, 2002 Memorandum Opinion and Order. *Rockefeller*, 58 Fed. Appx. at 428.

Plaintiff contends that *Rockefeller* is distinguishable for two reasons. First, Plaintiff asserts that *Rockefeller* addressed a claim based on violations of the EEOC complaint processes, not pre-complaint processes. Contrary to Plaintiff's argument, one of the regulations at issue in *Rockefeller* was § 1614.105(g), a "Pre-complaint processing" regulation. *See* 29 C.F.R. § 1614.105(g). Second, Plaintiff argues that *Rockefeller* is inapposite because there the plaintiff's claim was for "Violation of EEO Law, 29 CFR Part 1614," (*see Rockefeller*, No. Civ. 01-399 JP/LCS, Compl. (Doc. 1) at 8) and not a claim for Title VII retaliation, as here. Plaintiff contends that her claim is different because she alleges "that retaliation constituted the purpose and reason for the failure to process" her pre-complaint request. (Resp. (Doc. 28) at 11.) Plaintiff's Title VII retaliation claim is, however, essentially nothing more than a Title VII claim for violation of pre-complaint processing regulations. The only adverse actions Plaintiff alleges are the ways in which the USPS EEO failed to properly process and handle her pre-complaint requests. Plaintiff's only evidence of a causal connection between her request for pre-complaint process and the adverse actions is that the failure to process her claims was close in time to the filing of the pre-complaint. Every failure to follow a pre-complaint or complaint processing regulation, however, will be close in time to the filing of the respective pre-complaint or complaint that starts the clock running. Under Plaintiff's reasoning, any violation of the pre-complaint or complaint processing violations could simply be repackaged as a Title VII retaliation claim to avoid the effect of *Rockefeller*, *Jordan*, and like cases. The Court finds no reason to treat Plaintiff's Title VII retaliation claim differently from the EEO regulatory violation claim in *Rockefeller* or the Title VII failure-to-process claim brought in *Jordan*. *See Hill v. England*, 2005 WL 3031136, *1-3 (E.D. Cal. Nov. 8, 2005) (unpublished opinion) (dismissing

plaintiff's Title VII retaliation claim that was based on mishandling of plaintiff's EEO complaints for failure to state claim for relief); *Mayes v. Potter*, 2003 WL 23220738, *4-5 (W.D. Mich. May 22, 2003) (unpublished opinion) (dismissing plaintiff's Title VII retaliation claim that was based on the EEO's refusal to investigate or clear up the mix up of plaintiff's prior EEO cases).

Defendant also contends that 29 C.F.R. § 1614.107(a)(8), which expressly states that the agency must dismiss an entire complaint that "alleges dissatisfaction with the processing of a previously filed complaint," clearly reflects the EEOC's intent to except from Title VII coverage all claims based on the processing of complaints. Plaintiff argues, however, that § 1614.107(a)(8) does not apply because it refers to dissatisfaction with the processing of a previously filed "complaint," not with dissatisfaction with the processing of a "pre-complaint."

Plaintiff is correct that § 1614.107(a)(8) by its terms refers only to dissatisfaction with a previously filed "complaint," and does not separately list a previously filed "pre-complaint." This Court, however, finds no compelling reason to treat claims based on dissatisfaction with the processing of "pre-complaints" differently from "complaints." It makes little, if any, sense to dismiss the latter claims, but not the former. For example, if a complainant's pre-complaint is processed contrary to regulations, but a complainant nonetheless is able to file a complaint, which is then processed according to regulations on its merits, as occurred here during the processing of Plaintiff's underlying complaint, the harm to the complainant from the pre-complaint violation, if any exists at all, is minimal. Where there is no greater harm from the pre-complaint processing violation than from a complaint processing violation, there is no practical or public policy reason for treating the two violations differently. *Cf. Jordan*, 205 F.3d at 342 ("And even if the EEO Division botched the processing of her complaint, Jordan is now already in a federal court on the merits, and any earlier mishandling is essentially moot."). Indeed, the EEOC has treated complaints

15

based on pre-complaint and complaint processing violations the same, finding both subject to dismissal under § 1614.107(a)(8). *See Romero v. Rumsfeld*, EEOC DOC 01A62822, 2006 WL 1814180, *2 (E.E.O.C. June 20, 2006) ("We also find that the agency properly dismissed complainant's claims concerning pre-complaint processing as a "spin-off" complaint pursuant to 29 C.F.R. § 1614.107(a)(8), because these claims alleged dissatisfaction with the processing of an EEO complaint."); *Klassen v. Potter*, EEOC DOC 01A45681, 2004 WL 2924456, *1-2 (E.E.O.C. Dec. 8, 2004) (finding that agency properly dismissed complaint alleging dissatisfaction with processing of prior EEO complaint and with pre-complaint processing of instant complaint under 29 C.F.R. § 1614.107(a)(8)).

The EEOC's stated public policy reasons for dismissing spin-off complaints that allege dissatisfaction with the processing of a previously filed complaint apply equally to pre-complaints and complaints that allege dissatisfaction with the processing of a previously filed pre-complaint:

> The Commission continues to believe that any alleged unfairness or discrimination in the processing of a complaint can--and must--be raised during the processing of the underlying complaint and there is ample authority to deal with such allegations in that process. The spin-off allegations are so closely related to the underlying complaint that a separate complaint would result in redundancy, duplication of time and waste of resources. Such allegations need to be addressed within the over-all context of the initial complaint while that complaint is still pending. The Commission has decided to add the provision requiring dismissal of spin-off complaints to ensure that a balance is maintained between fair and nondiscriminatory agency processing of complaints and the need to eliminate the multiple filing of burdensome complaints about the manner in which an original complaint was processed.

Rules and Regulations, Equal Employment Opportunity Commission, 64 Fed. Reg. 37644-01, 37646 (July 12, 1999) (to be codified at 29 C.F.R. pt. 1614). The Court therefore concludes that Plaintiff's Second Pre-complaint, which merely alleged procedural mishandling of her First Pre-complaint, constituted a spin-off complaint not cognizable under Title VII.

16

As many courts have noted, the proper course of action for a plaintiff whose claim has been procedurally mishandled by an EEO Division or the EEOC is to bring a lawsuit against the plaintiff's employer on the merits.  *See*, *e.g.*, *Jordan*, 205 F.3d at 342.  In this case, following the dismissal of her EEO Complaint in January 2009, Plaintiff chose not to file an appeal to the EEOC or to file a civil case in district court regarding the merits of her underlying claim for gender discrimination.  Instead, she filed suit in this case based on the appropriate, lawful dismissal of her Second Pre-complaint.  For all the foregoing reasons, Plaintiff's Title VII retaliation claim based on the failure to properly process her pre-complaints fails to state a claim upon which relief can be granted.  *See Mayes*, 2003 WL 23220738 at *5 ("Plaintiff does not have a separate claim against the agency for failure to investigate, and Plaintiff cannot resurrect a claim he failed to pursue in a timely fashion by recasting it as a failure to investigate claim.").  Defendant is therefore entitled to summary judgment.[2]

**IT IS THEREFORE ORDERED** that Defendant Patrick R. Donahoe's Motion for Summary Judgment (**Doc. 25**) is **GRANTED**.

_____

SENIOR UNITED STATES DISTRICT JUDGE

---

[2]Given this ruling, the Court need not address Defendant's alternative argument that he had a legitimate, non-retaliatory explanation for his alleged adverse actions that Plaintiff has failed to rebut with evidence of pretext.

17